# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30891
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
April 9, 2014

Lyle W. Cayce
Clerk

DANYON MCCARROLL,

Plaintiff - Appellant

v.

WOOD GROUP MANAGEMENT SERVICES, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2402

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Danyon McCarroll brought an action against Baker Mo ("Baker"), an independent contractor conducting operations on a drilling platform. He alleged he was injured while assisting Baker in a cargo transfer operation. The district court held that McCarroll was an employee of another independent contractor, was not supervised by Baker, and that Baker owed no duty to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30891

McCarroll.　The district court granted summary judgment for Baker.　We AFFIRM.

BACKGROUND AND PROCEDURAL HISTORY

McCarroll was an employee of Grand Isle Shipyard, Inc. ("GIS"), an independent contractor for BP America Production Company ("BP") for operations aboard the BP Atlantis, a drilling platform in the Gulf of Mexico. BP also contracted with Baker to perform crane operations on the BP Atlantis. Wood Group / Mo Services, Inc. ("Wood Group"), as the successor in interest to Baker, is the defendant and appellee.　The BP Atlantis platform is located on the Outer Continental Shelf off the shore of the State of Louisiana.

McCarroll alleges that on July 2, 2009 he was injured as the result of a slip and fall while working for GIS on the BP Atlantis platform.　McCarroll and other GIS employees were instructed by the GIS foreman to assist Baker by detaching containers being unloaded using the platform crane.　During this operation, the Baker crane operator lifted containers from a barge to the platform.　The Baker flagman would signal where the crane operator was to position the cargo.　GIS employees grabbed the "tag line," guided the load on the platform, then disconnected the crane rigging from the container.

During the unloading of one such container, the rigging became "hung up," prompting McCarroll to cross the platform to retrieve a bar to dislodge it. After completing this task, McCarroll returned the bar, then slipped and fell on the platform's deck, which was wet as a result of a light rain that occurred before the operation began.　McCarroll alleges that he was handed over from GIS to Baker to assist with the unload operation and that he was under the supervisory control of Baker at the time of his injury.

McCarroll raises claims under the Outer Continental Shelf Lands Act, 43 U.S.C. §1333, *et seq.*, and Louisiana law alleging negligence on the part of Wood Group.　In October 2011, McCarroll filed suit in Louisiana state court

No. 13-30891

against Seatrax Services, Inc., and Seatrix of Louisiana, Inc., both being Louisiana corporations. In May 2012, McCarroll filed an amended petition naming Wood Group as a party.  In September 2012, the two Seatrax corporations were dismissed on McCarroll's motion.  Wood Group, as the only defendant and a Texas corporation, removed the suit on the basis of diversity to the United States District Court for the Eastern District of Louisiana.

Wood Group filed a motion for summary judgment. It argued that Baker did not owe a legal duty to McCarroll at the time of the accident because Baker contractors did not exercise supervision or control over McCarroll.  The district court granted summary judgment for Wood Group and found that no material issue of fact existed as to whether Baker maintained supervisory authority over McCarroll.  McCarroll filed a timely notice of appeal.

## DISCUSSION

Our review of a grant of summary judgment is *de novo.  Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

McCarroll brought his negligence claim under the Outer Continental Shelf Lands Act ("OCSLA"), directing us to apply the law of the state adjacent to the controversy, here Louisiana.  43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aenta Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969).  "That this law was to be federal law of the United States, applying state law only as federal law and then only when not inconsistent with applicable federal law, is made clear by the language of the Act." *Rodrigue,* 395 U.S. at 355-56. We conclude – though

3

No. 13-30891

no one has briefed the point – that Louisiana's negligence regime, applied to McCarroll's circumstances, would not be inconsistent with the relevant OCSLA "subchapter or with other Federal laws and regulations . . . ."  42 U.S.C. § 1333(a)(2)(A).

Negligence claims under Louisiana law undergo a five-part analysis: did the defendant owe a duty to conform conduct to a specific standard; was that obligation breached; was the breach the cause-in-fact of plaintiff's injury; was the breach the cause-in-law of plaintiff's injuries; and have actual damages been shown?  *Lemann v. Essen Lane Daiquiries, Inc.*, 923 So. 2d 627, 632-33 (La. 2006).  Whether the defendant owes a duty is a threshold question and is a question of law.  *Id* at 633.  Independent contractors do not generally owe a duty to protect the employee of another independent contractor beyond the exercise of ordinary care that is owed to the public generally.  *Lafont v. Chevron, U.S.A.*, 593 So. 2d 416, 420 (La. App. 1 Cir. 1991) (citing 65 C.J.S. *Negligence*, § 63 (113) (1966)).  One independent contractor owes another independent contractor at least "the duty to refrain from gross, willful or wanton negligence, and at the most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition."  *Id.*

The parties rely on Louisiana federal court opinions applying OCSLA and discussing independent contractor duty under Louisiana law.  For example, a federal district court held that one independent contractor owed no duty to another independent contractor's employee where it does not employ, share a contract, or actually supervise the plaintiff.  *Parker v. Petroleum Helicopters, Inc.*, 2002 WL 461655 at *1 (E.D. La. March 20, 2002).  We conclude that Louisiana law is properly explained in these decisions.  The only argument here is that what occurred prior to and during the operations in which McCarroll was injured made Wood Group his temporary supervisor. If evidence exists that control over McCarroll was transferred in some

4

meaningful way to Wood Group, and that Wood Group then negligently performed its supervisory duty, then Louisiana law might create liability for Wood Group.

McCarroll argues that the district court erred in determining there was no genuine dispute of material fact as to whether Baker owed a legal duty to McCarroll. The court granted summary judgment in part because "McCarroll present[ed] no evidence to show that Baker was supervising him when he was injured," and it, therefore, owed him no legal duty. On appeal, McCarroll asserts that he was under the direction and supervision of Baker at the time of his injury. He argues that there are genuine issues of material fact as to whether Baker was in a supervisory role.

McCarroll's principal factual argument is that he was "turned over" by his GIS foreman to Baker at the time the accident occurred, making a Baker employee his supervisor at the time of the accident. He also emphasizes that his employer was the independent contractor tasked with the scaffolding work on the platform, while his injury occurred during the unloading of a barge which was Baker's contracted-for obligation.

Our review of the record does not support McCarroll's arguments about Baker's assuming responsibility. It is clear that Baker had no contractual or employment relationship with McCarroll or with GIS. The tools and equipment that were supplied to McCarroll, including the pry bar McCarroll retrieved from a GIS toolshed immediately before the accident, were supplied by GIS and not Baker. It was McCarroll's GIS foreman, not a Baker employee, who told him to assist with the cargo transfer operations. McCarroll has presented no evidence, and thus created no fact dispute, that during this operation he received instruction, direction, or materials from a Baker employee. The fact that the GIS supervisor apparently did not remain to oversee McCarroll's work assisting Baker does not alter the analysis, as

No. 13-30891

McCarroll was still working under the GIS supervisor's order to help with the unloading.

Additionally, McCarroll argues that the district court misunderstood the evidence when it stated in the summary judgment opinion that McCarroll was instructed by his GIS supervisor to "unhook containers being unloaded from a vessel using the platform crane." No such statement appears in the record. There is evidence, though, that the GIS foreman told McCarroll to "assist with cargo transfer operations." Here, the distinction in language does not alter the district court's underlying conclusion, that it was his GIS supervisor, and not a Baker employee, who instructed McCarroll to participate in the cargo operation. The difference as to how the GIS foreman's instructions are described does not give rise to an issue of material fact as to whether Baker had supervisory authority over McCarroll at the time of the accident or to render the district court's well-reasoned findings erroneous.

AFFIRMED.